UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SERGIO GREGORIO SANCHEZ,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>OFFICER SMITH,<br><br>　　　　　　　　Defendant. | Case No. C19-0282-JCC-MAT<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Sergio Sanchez filed this civil rights action under 42 U.S.C. § 1983 while he was confined at the Skagit County Justice Center ("SCJC") in Mount Vernon, Washington. He alleges in this action that Officer Smith, a corrections officer at the SCJC, failed to protect him from harm when he placed plaintiff in a housing unit with rival gang members who attacked and brutally beat him. Corrections Officer Smith is the only defendant named in plaintiff's complaint. Officer Smith now moves for summary judgment. Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but has filed no response to defendant's summary judgment motion. The Court, having reviewed defendant's motion, and

REPORT AND RECOMMENDATION - 1

the balance of the record, concludes that defendant's motion for summary judgment should be granted, and that plaintiff's complaint and this action should be dismissed without prejudice.

BACKGROUND

Plaintiff submitted his complaint to the Court for filing on February 25, 2019.  (*See* Dkt. 1.)  Plaintiff alleges therein that, upon being booked into the SCJC on July 20, 2018, he "talked to a classification officer named Smith" and, after answering all of Officer Smith's questions, he told Officer Smith that there was "bad blood" between his gang and the "STG gang," and that he would be in danger of being physically assaulted if he was housed with any of the STG gang members.  (Dkt. 5 at 4.)  Plaintiff asserts that he was subsequently placed in M-pod which had several STG gang members in it.  (*Id*. at 5.)

Plaintiff claims he sent a kite to Officer Smith about this "grievous mistake" and, when Officer Smith did not reply, he tried to kite a sergeant to let them know about the problem.  (*Id*.)  According to plaintiff, he was told that "there are rival gang members in all the pods here at this facility and that those gang members were just going to have to get along with each other."  (*Id*.)  Plaintiff claims that he turned in many kites and grievances asking to be moved to a pod that did not have any STG gang members so that he would be safe from harm, but his requests were denied.  (*Id*.)  Plaintiff asserts that on October 6, 2018, he was attacked and beaten by several STG gang members in the dayroom area of M-pod.  (*Id*. at 6.)  Plaintiff suffered a fracture of his previously broken right arm, several cuts and bruises, and a "hole" in his lower lip that required stitches.  (*Id*.)

Officer Smith has submitted evidence in conjunction with his summary judgment motion which contradicts many of the assertions made by plaintiff in his complaint.  That evidence shows that Officer Smith was not working on the day plaintiff was booked into the SCJC and that it was actually Corrections Officer Chris Loveless who interviewed plaintiff.  (Dkt. 17, Attach. B at 1;

REPORT AND RECOMMENDATION - 2

Dkt. 19 at 1.) Officer Loveless also completed a security threat group documentation form during the booking process which shows that plaintiff identified himself as a member of the Sureno gang, though he claimed he was not active. (Dkt. 19, Attach. A.) Plaintiff apparently did not convey to Officer Loveless any concerns about his safety based upon gang affiliation. (*See* Dkt. 18 at 2; Dkt. 19 at 2.) Officer Smith subsequently reviewed the form prepared by Officer Loveless and chose to place plaintiff in M-pod. (Dkt. 18 at 2.) According to Officer Smith, there were not a significant number of Sureno gang members in the pod and plaintiff made no claims that he was at risk because he was not an active gang member. (*Id*.)

Plaintiff was placed in M-pod on July 29, 2018. (Dkt. 17 at 2.) On August 2, 2018, plaintiff submitted a kite in which he stated "I WAS WONDERING WHEN ILL BE GOING TO K POD BECAUSE IM NOT ACTIVE ANYMORE ALSO I WAS JUST AT (TRU) AT MONROE." (*See id*., Attach. D.) Plaintiff's kite gave no indication that he believed he was in danger in M-pod. (*See id*.) Officer Smith responded to the kite, indicating that it was undecided if and when plaintiff would be moved. (*See id*.; Dkt. 18 at 2.) Plaintiff was moved to P-pod on August 13, 2018 and stayed there only until August 21, 2018 when he was transferred back to M-pod. (*Id*.) Plaintiff remained in M-pod from August 21, 2018 through September 29, 2018. (*Id*. at 2-3.)

On September 15, 2018, plaintiff and two other inmates, Alberto Ledezma and Anthony Vasquez, were observed fighting in the dayroom of M-pod. (Dkt. 17, Attach. F.) Officers intervened and separated the inmates. (*See id*.) Plaintiff, who was bleeding heavily from his mouth and nose, was taken to the medical unit where it was determined that he would require stitches to his lip. (*Id*.) Plaintiff was transported to the Skagit Valley Hospital for stitches and, while there,

REPORT AND RECOMMENDATION - 3

his right arm was x-rayed and it was determined that his wrist was broken. (*Id*.) Plaintiff was given a soft cast and soft splint for his arm and was returned to the SCJC. (*Id*.)

Following the incident, plaintiff repeatedly asked to be moved to K-pod or J-pod and kept mentioning that they had Surenos housed there. (Dkt. 17, Attach. F at 2.) Plaintiff was returned to M-pod because there was some concern that plaintiff may have been planning to force a move. (*Id*.) However, directions were entered that Ledezma and Vasquez were not to be let out at the same time as plaintiff. (*Id*.) The day after the incident, plaintiff submitted a kite requesting that he not be moved to P-pod because he was a "dropout" and was concerned for his safety. (*Id*., Attach. G.)

Plaintiff was originally infracted for his role in the fight, but the infraction was dropped after video surveillance footage and further investigation revealed that inmates Ledezma and Vasquez had attacked plaintiff and plaintiff was acting in self-defense. (*See id*., Attach. F at 2-4.) Plaintiff declined to pursue charges against inmates Ledezma and Vasquez. (*Id*., Attach. H.) Inmates Ledezma and Vasquez were both recognized by the SCJC as Sureno gang members and not, as plaintiff asserts, members of some rival gang which he identifies in his complaint as STG. (*See* Dkt. 5 at 4-6; Dkt. 17 at 2-3.) In fact, STG is not a known gang at the SCJC but is instead an acronym used in the facility to refer to the security threat group documentation form. (Dkt. 17 at 3.)

On March 28, 2019, Officer Smith prepared a jail incident report in which he noted that plaintiff had been asking for a couple of weeks to be moved to P-pod so that he could see his cousin before he went to prison. (*Id*., Attach I.) When Officer Smith expressed his reluctance to move plaintiff to where active Surenos were housed given that plaintiff had previously stated he

REPORT AND RECOMMENDATION - 4

was a "dropout" and feared for his safety, plaintiff told Officer Smith that he was, in fact, an active Sureno gang member. (*Id*.)

Defendant argues in his summary judgment motion that this action should be dismissed because plaintiff failed to comply with the exhaustion requirement of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (*See* Dkt. 15 at 6-9.) Defendant argues in the alternative that plaintiff has not established any violation of a federal constitutional right and that he is entitled to qualified immunity. (*Id*., at 9-17.) The Court need only address defendant's exhaustion argument.

## DISCUSSION

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a) requires *complete* exhaustion through any available process. *See Porter v. Nussle* 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 735 (2001). Section 1997e(a) also requires *proper* exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper" exhaustion means full compliance by a prisoner with all procedural requirements of an institution's grievance process. *See id*. at 93-95. Finally, §1997e(a) requires exhaustion before a complaint is filed, and exhaustion of remedies during the course of the litigation does not constitute compliance with this requirement. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam). If administrative remedies have not been exhausted at the time an action is brought, the action must be dismissed without prejudice. *Id*.

Failure to exhaust administrative remedies is an affirmative defense which a defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). A defendant must produce evidence demonstrating that there was an

REPORT AND RECOMMENDATION - 5

available administrative remedy and that the prisoner did not exhaust that remedy. *Id*. at 1172. The burden then shifts to the prisoner who must show that there is something in his case that made the existing remedies effectively unavailable to him. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment. *Id*. at 1166.

The SCJC has a grievance procedure through which inmates may seek resolution of complaints or concerns regarding the conditions of their confinement, including housing and classification issues. (*See* Dkt. 17 at 2 and Attach. A.) The SCJC grievance process involves first attempting to resolve complaints informally through discussion of a particular concern with a staff member. (*See id.*, Attach. A at 1.) If this informal attempt at resolution is unsuccessful, an inmate may file a grievance through the facility's electronic S-phone system within 14 days of the complaint or issue.[1] (*See id*. at 2 and Attach. A at 2.) There are two S-phones located in each housing pod and they are accessible to all inmates when inmates are out of their cells. (*Id*. at 1.) Grievance responses are provided to inmates in electronic form by shift supervisors. (*Id.*, Attach. A at 1-2.) An inmate may appeal a supervisor's grievance response to the corrections chief as the final level of appeal. (*Id.*, Attach. A at 2-3.) Appeals to the corrections chief must be filed within five days of the inmate's receipt of the response to the original grievance. (*See id*.)

The evidence submitted by defendant in support of his summary judgment motion shows that while plaintiff used the S-phone system to submit various kites and grievances, he never filed any grievances related to his housing or classification prior to being attacked by what appear to

---

[1] An inmate may also request permission to submit a grievance directly to a supervisor, or to mail it directly to the corrections chief, if he reasonably believes the issues to be grieved are sensitive or would compromise his safety. (Dkt. 17, Attach. A at 2.)

REPORT AND RECOMMENDATION - 6

have been fellow gang members on September 15, 2018. (*See* Dkt. 17, Attach. D.) Plaintiff did submit a single inmate request, or kite, regarding his housing during the relevant time period, but that was only to inquire about when he would be moving to K-pod. (*See id.*, Attach. D at 1.) Plaintiff did not express any concerns regarding his safety in that request, nor did he ever apparently express any concern regarding his safety in M-pod prior to the attack. (*See id.*) Plaintiff offers no evidence to support the assertions in his complaint that he used the electronic grievance system "many times" to try and prevent the harm inflicted upon him by other inmates. (*See* Dkt. 5.)

Because the evidence in the record demonstrates that plaintiff had administrative remedies available to him but he did not exhaust those remedies with respect to the claims asserted in his complaint, this action must be dismissed for failure of plaintiff to comply with the exhaustion requirement of 42 U.S.C. § 1997e(a).

## CONCLUSION

Based on the foregoing, this Court recommends that defendant's motion for summary judgment be granted, and that plaintiff's complaint and this action be dismissed without prejudice. A proposed order accompanies this Report and Recommendation.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within

REPORT AND RECOMMENDATION - 7

**fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 1, 2019**.

DATED this 9th day of October, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8